IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 07–cv–01276–EWN–MJW

TRAVIS STAR NELSON,

    Plaintiff,

v.

STATE OF COLORADO,
THE COLORADO DEPARTMENT OF CORRECTIONS,
THE ARKANSAS VALLEY CORRECTIONAL FACILITY,
CARL ZENON, Warden, in his official and individual capacity, Arkansas Valley Correctional Facility,
DR. JOSEPH WERMERS, in his official and individual capacity,
ARROWHEAD CORRECTIONAL CENTER,
DONICE NEAL, Warden, in his official and individual capacity, Arrowhead Correctional Center,
DOLORES MONTOYA, Health Services Administrator, in her official and individual capacity, Arrowhead Correctional Center,
DR. LOUIS CABILING, Arrowhead Correctional Center Doctor, in his official and individual capacity,
FREMONT CORRECTIONAL FACILITY,
GARY WATKINS, Warden, in his official and individual capacity, Fremont Correctional Facility,
DR. TIMOTHY CREANY, in his official and individual capacity, Trinidad Correctional Facility,
MR. RONALD LEYBA, Warden, in his official and individual capacity, Trinidad Correctional Facility,
STERLING CORRECTIONAL FACILITY,
GARY GOLDER, Warden, in his official and individual capacity, Sterling Correctional Facility,
DR. PAULA FRATZ, in her official and individual capacity, Sterling Correctional Facility,
FOUR MILE CORRECTIONAL CENTER,
KAREN SUTHERLAND, Head of Clinical Services, in her official and individual capacity, Colorado Department of Corrections,
DR. BAUTISTA, in her official and individual capacity, Four Mile Correctional Facility,

    Defendants.

## ORDER AND MEMORANDUM OF DECISION

This is a civil rights action arising under 42 U.S.C. § 1983 ("section 1983"). Plaintiff Travis Star Nelson alleges that Defendants violated section 1983 by assigning him to inappropriate work details based on his medical condition and failing to provide adequate treatment with deliberate indifference to his constitutional rights. Plaintiff also asserts state tort claims based upon these same allegations. This matter is before the court on Defendants' "Motion to Dismiss," filed August 16, 2007. Jurisdiction in premised upon 28 U.S.C. §§ 1331, 1343, 1367.

## FACTS

*1. Factual Background*

The following facts are taken from Plaintiff's complaint and presumed true for the purposes of this motion. Plaintiff is a former inmate who was incarcerated at multiple correctional facilities in Colorado between March 2003 and July 13, 2006. (Compl. ¶¶ 22, 37 [filed June 18, 2007] [hereinafter "Compl."].) Plaintiff injured his back in a car accident in January 2002 and was arrested in August 2002. (*Id*. ¶ 22.) During his intake with the Colorado Department of Corrections ("CDOC") clinical services in March 2003, Plaintiff was given a maximum lifting restriction of twenty-five pounds. (*Id*.)

In August 2003, Plaintiff reported lower back pain after being told to lift fifty pounds while working in the Arkansas Valley Correctional Facility ("AVCF") kitchen. (*Id*.) Plaintiff was seen by clinical services and released from his work assignment. (*Id*.)

Upon reassignment to the AVCF canteen, Plaintiff was put to work lifting boxes in excess of 150 pounds. (*Id*. ¶ 24.) Upon lifting his first set of boxes, Plaintiff blew out two discs in his lower back. (*Id*.) Plaintiff thereafter required a wheelchair, walker, crutches, and four-pronged cane. (*Id*.) After reporting his injury and filing a grievance, Plaintiff was subjected to harassment. (*Id*. ¶ 25.) Dr. Joseph Wermers, an AVCF doctor who treated Plaintiff, was very rude and threatening. (*Id*.)

Around December 2003, Plaintiff sent out a twenty-page document to CDOC officials "documenting all the malpractice, malice, and indifference" to which he had been subjected. (*Id*. ¶ 26.) The Colorado State Board of Medical Examiners opened a case against Dr. Wermers. (*Id*.) On or about January 8, 2004, Dr. Wermers summoned Plaintiff and ordered that his crutches be taken away. (*Id*. ¶ 27.) Plaintiff was forced to crawl back to his cell and thereafter went thirty days without "a single dose of medication or a facility meal." (*Id*.) Plaintiff's crutches were only returned to him upon his transfer to Arrowhead Correctional Center ("ACC") on or about January 21, 2004. (*Id*.)

When Plaintiff filed a grievance at ACC alleging that he was not receiving adequate care, Dolores Montoya, ACC's Health Services Administrator, threatened to manipulate Plaintiff's medical coding number to send him to a higher security facility. (*Id*. ¶ 28.) After this threat was echoed by Plaintiff's case manager, Plaintiff reported the threat to Donice Neal, ACC's warden.

(*Id.*)  Plaintiff's medical coding number was thereafter reclassified with the cooperation of Dr. Louis Cabiling, an ACC and Trinidad Correctional Facility ("TCF") doctor.  (*Id.* ¶¶ 10, 28.)  On or about April 10, 2004, Plaintiff was sent to Fremont Correctional Facility ("FCF") which "holds mostly sexual offenders," although Plaintiff had not been convicted of a sexual crime.  (*Id.*)

On April 12, 2004, Plaintiff's life was threatened by an FCF officer after Plaintiff requested disability accommodations.  (*Id.* ¶ 29.)  When Plaintiff complained, he was thrown into "the 'hole'" without any disciplinary infraction.  (*Id.*)  On May 11, 2004, Dr. Timothy Creany, an FCF doctor, initially classified Plaintiff as "mobility impaired," but withdrew his classification after learning that Plaintiff had filed complaints against Drs. Wermers and Cabiling.  (*Id.* ¶ 30.)  Plaintiff "proved that [ACC] Clinical Services had subjected [Plaintiff] to reprisal for his good faith use of the grievance process,"[1] and was transferred to TFC in June 2004.  (*Id.*)

After difficulty receiving food and medication due to his immobility, Plaintiff reported pain and mobility problems to Dr. Cabiling.  (*Id.* ¶ 31.)  Dr. Cabiling refused to treat Plaintiff or provide physical therapy or medication that had been prescribed by Dr. Creany.  (*Id.*)  Plaintiff was disciplined after asking a nurse for medical attention in a "medline," and was sent to Bent County Correctional Facility ("BCCF"), a medium security prison, in July 2004, due to an increase in Plaintiff's "points."  (*Id.*)  Plaintiff received good care while at BCCF.  (*See id.* ¶ 32.)

In early January 2005, Plaintiff was transferred to Sterling Correctional Facility ("SCF") after his points were decreased.  (*Id.* ¶ 32.)  The SCF clinical services refused to provide Plaintiff

---

[1]To whom Plaintiff "proved" this reprisal is unclear from the complaint.  (*See* Compl. ¶ 30.)

with the level of care he had been receiving at BCCF, and Dr. Paula Frantz, an SCF doctor, refused to replace Plaintiff's cane after it broke. (*Id.* ¶¶ 33–34.) When Plaintiff was ordered to walk across the prison yard to have another examination, he collapsed, further exacerbating his back injury. (*Id.* ¶ 34.) Plaintiff asked for and received a transfer to Four Mile Correctional Facility ("FMCF") on or about March 7, 2005. (*Id.*)

While at FMCF, Dr. Bautista,[2] an FMCF doctor, failed to provide adequate treatment or medications to Plaintiff or to follow the recommendations made by Plaintiff's doctors at BCCF. (*Id.* ¶ 33.) Plaintiff was forced to work despite having been classified "medically unassignable." (*Id.* ¶ 35.) Plaintiff was released from the CDOC on July 13, 2006. (*Id.* ¶ 37.)

## 2. *Procedural History*

In September 2005, Plaintiff filed a complaint in Denver District Court alleging two torts against the State of Colorado, the CDOC, the Colorado State Department of Human Services, and "other unknown persons." (Defs.' Mot. to Dismiss [hereinafter "Def.'s Br."], Ex. 1 [Denver District Ct. Compl.] [filed Aug. 18, 2007].) On December 7, 2005, Denver District Court dismissed Plaintiff's claims for lack of subject matter jurisdiction under the Colorado Governmental Immunity Act (the "CGIA"). (*Id.*, Ex. 4 [Denver District Ct. Order].)

On June 18, 2007, Plaintiff filed a complaint in this court. (Compl.) Plaintiff asserts one section 1983 claim against all Defendants for acting with deliberate indifference in denying him adequate medical treatment in violation of his Fifth, Eighth, and Fourteenth Amendment rights.

---

[2]Plaintiff never ascribes a first name or gender to Dr. Bautista. (*See* Compl. ¶¶ 21, 33.)

(*Id.* ¶ 36.) Plaintiff asserts two tort claims against all Defendants based upon the same actions, and one *respondeat superior* claim against Defendant Karen Sutherland, Director and Head of Clinical Services for the CDOC, for her "partial responsibility" for Plaintiff's poor treatment. (*Id.* ¶¶ 40–45.)

On August 18, 2007, Defendants filed a motion to dismiss, arguing Plaintiff's section 1983 claims are: (1) barred by the statute of limitations; (2) barred against the CDOC and the AVCF, ACC, FCF, TCF, SCF, and FMCF (collectively the "Correctional Facility Defendants") by the Eleventh Amendment; (3) untenable as against all CDOC employees in their *official* capacities as a matter of law; (4) untenable as asserted against many[3] CDOC employees in their *individual* capacities for failure to allege personal participation; and (5) precluded by *res judicata*. (Defs.' Br.) Defendants further argue Plaintiff's state tort claims are barred by: (1) various state statutes of limitations; (2) the CGIA; and (3) the doctrine of *res judicata*. (*Id.*) On September 19, 2007, Plaintiff filed a response brief. (Pl.'s Mem. of Law in Supp. of Denial of Defs.' Mot. to Dismiss [filed Sep. 19, 2007] [hereinafter "Pl.'s Resp."].) On October 12, 2007, Defendants filed a reply brief. (Reply in Supp. of Defs.' Mot. to Dismiss [filed Oct. 12, 2007] [hereinafter "Defs.' Reply"].) On November 30, 2007, Magistrate Judge Michael J. Watanabe recommended that

---

[3]Defendants fail to specify which CDOC employees are allegedly exempted from liability on the basis of Plaintiff's failure to allege personal participation. (*See* Defs.' Br. at 12.) Instead, Defendants argue that Gary Golder, SCF's warden, is exempted from liability on this basis, and add: "Plaintiff's claims as they relate to numerous other individuals named in this lawsuit also fail for lack of personal participation. However, those Defendants have not been served with process." (*Id.* at n.5.) I analyze Defendants' service of process argument as it relates to Plaintiff's claims against certain Defendants below. (*See Analysis* § 2[a][vi], *infra*.)

Plaintiff's claims against multiple defendants be dismissed without prejudice for failure to serve and failure to prosecute. (Recommendation of Dismissal of Claims Against Defs. Donice Neal, Louis Cabiling, Gary Watkins, Ronald Leyba, Gary Golder, Karen Sutherland, and Dr. Bautista for Failure to Serve and Failure to Prosecute [filed Nov. 30, 2007] [hereinafter "Recommendation"].) This matter is fully briefed.

**ANALYSIS**

*1.   Legal Standard*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

Thus, all well-pleaded factual allegations in a complaint are accepted as true and construed in the light most favorable to the plaintiff. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). Prior to the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1974 (2007), dismissal of a complaint was appropriate only when it appeared the plaintiff could prove no set of facts in support of the claims that would entitle him to relief. *See, e.g.*, *Coosewoon v. Meridian Oil Co.*, 25 F.3d 920, 924 (10th Cir. 1994). In *Bell Atlantic*, the Supreme Court articulated a new "plausibility" standard, under which

a complaint must include "enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974.

## 2. *Evaluation of Claims*

Defendants argue Plaintiff's section 1983 and state tort claims should be dismissed for different reasons. (*See* Defs.'s Br. at 7–17.) Because disposition of Plaintiff's section 1983 claims could affect supplemental jurisdiction over Plaintiff's state tort claims, I address Plaintiff's section 1983 claims first.

### a. *Section 1983 Claims*

Defendants argue that Plaintiff's section 1983 claims should be dismissed because they are: (1) barred by the statute of limitations; (2) barred against the CDOC and the Correctional Facility Defendants by the Eleventh Amendment; (3) untenable as against all CDOC employees in their *official* capacities as a matter of law; (4) untenable as asserted against many CDOC employees in their *individual* capacities for failure to allege personal participation; and (5) precluded by *res judicata*. (Defs.' Br.) Although Plaintiff fails to address many of these arguments directly, he does argue that: (1) the statute of limitations unfairly discriminates against his federal cause of action and should be tolled because Plaintiff only discovered his claims in consultation with an attorney within the limitations period; and (2) *res judicata* is inappropriate because Plaintiff's federal suit differs from his earlier state court suit in term of the parties, issues, and claims addressed. (Pl.'s Resp.)

Section 1983 provides a remedy for constitutional violations committed by individuals who act under color of state law. *See* 42 U.S.C.A § 1983 (West 2007). Specifically, section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* Thus, to establish a violation of section 1983, Plaintiff must allege that: (1) Defendants acted under color of state law to deprive him of a right, and (2) the right of which Defendants deprived him was secured by the Constitution or the laws of the United States. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). Defendants do not address, and therefore necessarily do not dispute, that they are state actors and the Constitution protects the rights allegedly violated in this case. (*See* Defs.' Br.; Defs.' Reply.) With these general considerations in mind, I address Defendants' arguments in further detail below.

### i. *Statute of Limitations*

Defendants first argue that Plaintiff's section 1983 claims are time-barred because: (1) his allegations all relate to events that occurred more than two years before the filing of his complaint; and (2) his claims accrued at the time each alleged event occurred. (Defs.' Br. at 8–9.) Plaintiff counters that the statute of limitations unfairly discriminates against his federal cause of action and should be tolled because he only discovered his claims in consultation with an attorney within the limitations period. (Pl.'s Resp. at 16–19.)

At the outset, I note that Federal Rule of Civil Procedure 12(b)(6) is a proper vehicle for dismissing a complaint that, on its face, indicates the existence of an affirmative defense such as noncompliance with the limitations period. *See, e.g.*, *Bullington v. United Air Lines*, 186 F.3d 1301, 1311 n.3 (10th Cir. 1999) *abrogated on other grounds as recognized by Boyer v. Cordant Techs.*, 316 F.3d 1137, 1140 (10th Cir. 2003); *see also Aldrich v. McCulloch Props.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) ("Statute of limitations questions may . . . be appropriately resolved on a [Federal Rule of Civil Procedure] 12[b] motion."). Moreover, when dates given in a complaint make it clear that the right sued upon has been extinguished, "the plaintiff has the burden of establishing a factual basis for tolling the statute." *Aldrich*, 627 F.2d at 1041 n.4.

In assessing the timeliness of a section 1983 claim, courts apply the forum state's personal injury statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985). Moreover, "where state law provides multiple statutes of limitations for personal injury actions, courts considering [section] 1983 claims should borrow the general or residual statute for personal injury actions." *Owens v. Okure,* 488 U.S. 235, 249–50 (1989). Colorado has multiple personal injury statutes of limitations, and the Tenth Circuit had recognized that the residual statute of limitations for all actions — including personal injury actions — is two years. *See, e.g.*, *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993) (citing Colo. Rev. Stat. § 13–80–102[1][i]). Although courts may only apply a state statute of limitations if it is not "inconsistent with the Constitution and laws of the United States," the Tenth Circuit has explicitly held that "Colorado's two-year residual statute of limitations comports with all relevant federal interests." *Blake*, 997 F.2d at 751.

State law governs the limitations period for a section 1983 claim, but federal law determines when a claim accrues. *Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005). "Section 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the *injury* which is the basis of his actions." *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) (citation and quotation marks omitted) (emphasis added); *see also Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) ("A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." [citation and quotation marks omitted]). Moreover, the doctrine of equitable tolling requires a plaintiff to show that his ignorance of a claim "was not the result of his lack of diligence, but was due to **affirmative acts** or **active deception** by [the defendant] to conceal the facts giving rise to the claim." *Baker v. Bd. of Regents.*, 991 F.2d 628, 633 n.4 (10th Cir. 1993) (citation omitted) (emphasis in original).

In the instant case, Plaintiff's argument that Colorado's residual statute of limitations unfairly discriminates against his federal cause of action is clearly refuted by Tenth Circuit law. *See Blake*, 997 F.2d at 751 (holding that Colorado's two-year statute of limitations "comports with all relevant federal interests"). Moreover, the face of Plaintiff's complaint makes plain he knew of his injuries at the time each alleged event occurred, and Plaintiff alleges no facts suggesting that Defendants engaged in any affirmative acts or active deception to justify a tolling of the statute of limitations.

On June 18, 2007, Plaintiff filed his complaint in the instant case. (Compl.) With the exception of two paragraphs relating to Plaintiff's treatment at FMCF, all the factual allegations

therein explicitly refer to time periods predating the filing of Plaintiff's complaint by more than two years. (*Compare id.* ¶¶ 33, 35, *with id.* ¶¶ 22–32, 34.) These allegations, moreover, demonstrate that Plaintiff knew of his injuries at the time each alleged event occurred. For instance, Plaintiff: (1) "reported lower back pain" in August 2003; (2) "sent a [twenty] page document" detailing "all the malice and deliberate indifference that he had been subjected to" in December 2003; (3) "explained to Dr. Wermers that he was in severe pain" in January 2004; (4) "immediately reported" an alleged threat to retaliate against him sometime before April 2004; (5) "immediately . . . report[ed]" an alleged threat on his life in April 2004; (6) "reported his pain and mobility difficulties" sometime before July 2004; and (7) "explained that he was unable to be mobile without a cane" in February 2005. (*Id.* ¶¶ 22, 26–29, 31, 34.) Because section 1983 claims accrue when a plaintiff knows or has reason to know of the injuries which form the bases of his claims, the face of Plaintiff's complaint makes clear that the vast majority of his claims have been extinguished. Accordingly, Plaintiff bears the burden of establishing a factual basis for the tolling of the statute with respect to these claims. *Aldrich*, 627 F.2d at 1041 n.4.

Despite this burden, Plaintiff alleges no facts to suggest that Defendants committed any "**affirmative acts** or **active deception**" that could have prevented him from discovering his claims. *Baker*, 991 F.2d at 633 n.4 (emphasis in original). Instead, Plaintiff's counsel simply argues, *in his briefing*, that "this [p]ro [s]e plaintiff could not possibly have discovered his claim until, at least, 2005 when he . . . filed" his tort suit in Denver District Court.[4] (Pl.'s Resp. at 17.)

---

[4]Why Plaintiff's counsel refers to Plaintiff as a "[p]ro [s]e plaintiff" is mystifying to this court. Nonetheless, given the fact of this reference, and counsel's numerous citations to irrelevant

As Plaintiff's counsel reasons: "It was then, in consultation with an attorney, that [Plaintiff] came to know that he had been wronged." (*Id.* at 19.) This argument is wholly unconvincing. Even if Plaintiff had made such allegations *in his complaint*, they would have been insufficient to justify equitable tolling as Plaintiff would need to have alleged "**affirmative acts** or **active deception**" on the part of Defendant. *See Baker*, 991 F.2d at 633 n.4 (emphasis in original). Accordingly, I find Plaintiff's section 1983 claims are time-barred to the extent that such claims are premised upon injuries Plaintiff sustained more than two years before the filing of his complaint. *See, e.g.*, *Trobaugh v. United States*, No. 01-03253, 2002 WL 1038763, at *2–3 (10th Cir. May 23, 2002) (affirming dismissal on statute of limitations grounds where plaintiff's pleadings were "replete with statements affirming his injury, his knowledge of the existence of the alleged injury, and the alleged cause of it"). Nonetheless, Plaintiff alleges one set of injuries which — read in the light most favorable to Plaintiff — could plausibly have occurred within the limitations period. (*See* Compl. ¶¶ 33, 35.) Specifically, Plaintiff alleges he was transferred to FMCF on or about March 7, 2005, and was thereafter forced to work despite having been classified "medically unassignable." (*Id.* ¶ 35.) Plaintiff also alleges he was denied adequate medical care by Dr. Bautista at FMCF. (*Id.* ¶ 33.) Because these allegations are not temporally restricted by any terminal date, they could plausibly relate to events that occurred after the June 18, 2005, cutoff date provided by the statute of limitations. I therefore assess each of Defendants' remaining arguments to determine how they affect the viability of Plaintiff's remaining section 1983 claims.

---

case law from irrelevant jurisdictions, it might as well be true.

### ii.     *Eleventh Amendment Immunity*

Defendants' next argue that Plaintiff's section 1983 claims — including those arising from his confinement at FMCF — are barred against the CDOC and the Correctional Facility Defendants by the Eleventh Amendment. (*See* Defs.' Br at 7.) Plaintiff concedes this argument, and my independent research confirms the same. (*See* Pl.'s Resp. at 14.) The Eleventh Amendment bars federal suits against states or arms of the state by individuals. *See, e.g.*, *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1231–32 (10th Cir. 1999). As the Tenth Circuit has found, the CDOC is an arm of the state entitled to Eleventh Amendment immunity. *See, e.g.*, *Griess v. Colorado*, 841 F.2d 1042, 1045 (10th Cir. 1988) ("[W]e affirm the district court's dismissal of plaintiff's claims against the state and its department of corrections on Eleventh Amendment immunity grounds."); *accord Wright v. Hickman*, No. 00-1394, 2002 WL 1165925, at *5 (10th Cir. June 4, 2002). Correctional facilities are likewise arms of the state entitled to Eleventh Amendment immunity. *See, e.g.*, *Davis v. Bruce*, 215 F.R.D. 612, 618 (D. Kan. 2003) (holding correctional facility to be arm of the state for Eleventh Amendment purposes). Accordingly, I dismiss all of Plaintiff's remaining section 1983 claims against the CDOC and the Correctional Facility Defendants. This leaves Plaintiff's claims against CDOC employees in their *official* and *individual* capacities as the only potentially surviving section 1983 claims, and it is to these claims that I now turn.

### iii.     *Official Capacity Claims*

Defendants' third argument is that Plaintiff's section 1983 claims — including those arising from Plaintiff's confinement at FMCF — are untenable against CDOC employees in their

*official* capacities as a matter of law. (*See* Defs.' Br. at 7–8.) Defendant concedes this argument, and I accordingly dismiss all of Plaintiff's section 1983 claims against CDOC employees in their *official* capacities. (*See* Pl.'s Resp. at 14.)

> *iv.* *Individual Capacity Claims*

Defendants' fourth argument is that Plaintiff's section 1983 claims fail as to many CDOC employees in their *individual* capacities for failure to allege personal participation in the allegedly unconstitutional acts of others. (Defs.' Br. at 12.) Plaintiff responds — somewhat inappositely — that supervisory liability of many such CDOC employees could be premised upon theories of deliberate indifference and inadequate training. (Pl.'s Resp. at 22–23.) Defendants reply that, even if this is true, Plaintiff has failed to allege adequate *facts* to support such theories. (Defs.' Reply at 9–10.)

I narrow the inquiry by noting that, based on the allegations in his complaint, Plaintiff's remaining section 1983 claims may only plausibly be asserted against two CDOC employees in their *individual* capacities: Dr. Bautista and Ms. Sutherland. (*See* Compl. ¶¶ 33, 35, 45.) Plaintiff directly alleges that Dr. Bautista violated his rights at FMCF, and Ms. Sutherland, Director and Head of Clinical Services for the CDOC, could plausibly be liable for such alleged violations on a theory of supervisory liability, assuming Plaintiff alleges sufficient facts to support such a theory.[5] (*See* Compl. ¶ 33.) Defendants' personal participation argument could only potentially apply to

---

[5]Interestingly, in contrast to the other five correctional facilities at which Plaintiff alleges his rights were violated, Plaintiff does *not* name the warden of FMCF as a Defendant. (*See* Compl.)

Ms. Sutherland, as Defendants do not — and plausibly could not— assert that Plaintiff's claim against Dr. Bautista fails for insufficient allegations of his or her own participation in his or her alleged constitutional violations.

It is well established that "[l]iability of a supervisor under [section] 1983 must be predicated on the supervisor's deliberate indifference, rather than mere negligence." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (citation omitted). Supervisory liability requires an "allegation[] of personal direction or of actual knowledge and acquiescence" in an alleged constitutional violation. *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992) (citation and quotation marks omitted). Plaintiff alleges no facts to suggest deliberate indifference, personal direction, or actual knowledge and acquiescence on the part of Ms. Sutherland in any constitutional violation. (*See* Compl. ¶ 45.) On the contrary, the only allegation pertaining to Ms. Sutherland in Plaintiff's entire complaint is his single conclusory sentence: "It is hereby alleged that Karen Sutherland, the Director and Head of Clinical Services of the [CDOC] was partially responsible for the injuries, indifference, and suffering brought upon [Plaintiff] as the Supervisor of the Medical Department and Clinical Services of the Colorado Department of Corrections." (*Id.*) Because Plaintiff fails to support his section 1983 claim against Ms. Sutherland in her *individual* capacity with a single factual allegation, I must dismiss this claim. *See Bell Atlantic*, 127 S. Ct. at 1965 (stating plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action"). This leaves Plaintiff's claim against Dr. Bautista in his or her *individual* capacity as Plaintiff's sole surviving section 1983 claim.

### v. *Res Judicata*

Defendants argue last that Plaintiff's section 1983 claims — including his claim against Dr. Bautista in his or her *individual* capacity — are barred by the doctrine of *res judicata*. (Defs.' Br. at 9–11.) Plaintiff counters that *res judicata* is inapplicable because his federal suit differs from his earlier state court suit in term of the parties, issues, and claims addressed. (Pl.'s Resp at 20–21.) Despite Defendants' citation of misleading authority to the contrary, it would be improper for this court to consider Defendants' *res judicata* defense without first converting Defendants' motion into one for summary judgment, which this court declines to do.[6] *See, e.g.*, *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965) (finding error in district court's ruling on *res judicata* defense raised in motion to dismiss where such defense did not appear plainly on the face of the complaint). In so declining, I note that a *res judicata* defense would likely be unavailing to Defendants anyway as: (1) Dr. Bautista was neither a party nor a privy to a party in the earlier action as is required by claim preclusion; and (2) the earlier action contained no constitutional determination essential to its judgment as is required by issue preclusion. *See, e.g.*, *Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464, 1467 (10th Cir. 1993) (noting that claim preclusion may only be applied when the earlier action involved the same parties or their privies);

---

[6]Defendants cite *St. Louis Baptist Temple, Inc. v. Federal Deposit Insurance Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) for the proposition that a court may take judicial notice of proceedings in another court to decide a *res judicata* defense in a motion to dismiss without first converting that motion into a motion for summary judgment. (*See* Defs.' Br. at 4 n.2.) *St. Louis Baptist Temple, Inc.*, however, holds no such thing; instead, the case explicitly states that "a district court may utilize the doctrines underlying judicial notice *in hearing a motion for summary judgment*." 605 F.2d at 1171–72 (emphasis added).

*Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir. 1990) (noting that issue preclusion requires a "determination of issues by a valid final judgement to which such determination was essential"). Accordingly, I decline to dismiss Plaintiff's section 1983 claim against Dr. Bautista in his or her *individual* capacity on *res judicata* grounds.

### vi. Failure to Serve Dr. Bautista

Finally, I consider the magistrate judge's recommendation that Plaintiff's claims against Dr. Bautista be dismissed without prejudice for failure to serve and failure to prosecute.[7] (Recommendation at 3.) Because Plaintiff has not timely objected to this recommendation, and because I find the magistrate judge's recommendation proper, I dismiss without prejudice Plaintiff's section 1983 claims against Dr. Bautista in his or her *individual* capacity. *See* 28 U.S.C.A. § 636(b)(1)(C) (West 2007) (parties have ten days to file objections to magistrate judge's recommendation after being served); Fed. R. Civ. P. 72(b) (2007) (same). Thus, each of Plaintiff's section 1983 claims against every Defendant is dismissed.

### b. State Tort Claims

Having dismissed all of Plaintiff's section 1983 claims, I exercise my discretion under 28 U.S.C. § 1367(c)(3) to decline supplemental jurisdiction over Plaintiff's state tort claims. *See id.* (district court may decline supplemental jurisdiction "if . . . [it] has dismissed all claims over which it has original jurisdiction"). In so declining, I note that, even had I accepted jurisdiction,

---

[7]The magistrate judge also recommends Plaintiff's claims against six other Defendants be dismissed on the same grounds. (*See* Recommendation at 3.) Because this recommendation is now moot with respect to Plaintiff's section 1983 claims against these Defendants, I decline to consider it further.

dismissal would likely have been required under the CGIA, applicable statutes of limitations, or both. *See* Colo. Rev. Stat. §§ 24–10–101 *et seq*. (2007) (extending governmental immunity to state entities and their employees); *id*. § 13–80–102.5 (establishing two-year statute of limitations for medical torts); *id*. § 13–80–103 (establishing one-year statute of limitations for tort actions against law enforcement officers).

I deny Defendants' request for mandatory attorney fees under Colorado Revised Statutes section 13–17–201, noting that section 13–17–201 only requires mandatory attorney fees when a court *dismisses* tort actions under either Colorado Rule of Civil Procedure 12(b) or Federal Rule of Civil Procedure 12(b). (*See* Defs.' Br at 18; Defs.' Reply at 14–15); Colo. Rev. Stat. § 13–17–201 (2007) (requiring mandatory award of attorney fees where tort claim is dismissed under Colorado Rule of Civil Procedure 12[b]); *Jones v. Denver Post Corp.*, 203 F.3d 748, 757 n.6 (10th Cir. 2000) (holding Colorado Revised Statutes section 13–17–201 to be substantive law of the forum state requiring mandatory award of attorney fees when federal court dismisses pendant state tort claims under Federal Rule of Civil Procedure 12[b][6]). Because I have declined supplemental jurisdiction over Plaintiff's state tort claims rather than dismissed them, I need not grant mandatory attorneys fees pursuant to section 13–17–201.

*3.     Conclusion*

Based on the foregoing it is therefore ORDERED that:

1. DEFENDANTS' motion (#7) is GRANTED with respect to Plaintiff's section 1983 claims. The clerk shall forthwith enter judgment in favor of Defendants and against Plaintiff, dismissing all of Plaintiff's section 1983 against every Defendant with prejudice, except Plaintiff's

section 1983 claim against Dr. Bautista in his or her *individual* capacity, which is dismissed without prejudice. Defendants may have their costs by filing a bill of costs within eleven days of the date of this order.

       2. The claims arising out of state law are dismissed without prejudice for want of jurisdiction.

       Dated this 17th day of December, 2007

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge